Kenneth L. MARSH, Plaintiff,

v.

SAN DIEGO COUNTY, et al., Defendants.

No. CIV. 05–1568WQH(NLS).

United States District Court, S.D. California.

May 5, 2006.

Dennis B. Atchley, Law Offices of Donnie R. Cox, Oceanside, CA, for Plaintiff.

Deborah Anne McCarthy, County of San Diego Office of County Counsel, Colin Henry Murray, Baker & McKenzie LLP, San Diego, CA, for Defendants.

## ORDER

HAYES, District Judge.

Pending before the Court is a Motion to Dismiss filed by Defendant County of San Diego and Defendant Murphy [Doc. No. 9], a Motion to Dismiss filed by Defendant Chadwick and Defendant Children's Hospital [Doc. No. 5], and a Motion to Dismiss filed by Defendant Williams [Doc. No. 32]. Each Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Also before the Court is Plaintiff's Request for Judicial Notice [Doc. Nos. 22, 38], Defendants Children's Hospital and Chadwick's Request for Judicial Notice [Doc. No. 7], and Defendants County, Williams, and Murphy's Request for Judicial Notice [Doc. No. 11]. The Court

finds these matters suitable for submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d). After considering the arguments raised by the parties in their briefings, the Court now issues the following rulings.

## BACKGROUND [2]

On April 27, 1983, Plaintiff Kenneth Marsh was babysitting Phillip Buell, then age 33 months and his sister Jessika, then age 18 months. The children were playing together on the couch in the living room. According to the Complaint, Plaintiff left the room at approximately 11:00 a.m. to get a vacuum cleaner. While Plaintiff was out of the room, he heard a crashing sound. He hurried back in to find that Phillip had fallen from the couch onto a fireplace hearth and glass ash tray, severely injuring himself. There were no eyewitnesses to Phillip's fall. Paramedics transported Phillip to Alvarado Hospital. At Alvarado Hospital, an E.R. physician examined Phillip and saw no evidence of papilledema, no retinal hemorrhages, no battle signs and no palpable fractures. Phillip was transferred to Sharp's Hospital, and eventually to San Diego Children's Hospital, where Phillip was treated. During transport to Children's Hospital, Phillip was administered eight (8) grams of Mannitol. Plaintiff alleges this was "contraindicated" by Philips medical history and "exacerbated the child's intercranial bleed AND [sic] increased his swelling." Complaint at 13. Phillip was also given a blood transfusion and suffered "Bradycardia (slowness of the heart beat)." *Id.* Phillip died the next day.

---

1. Defendant Williams submitted a Reply in support of his Motion to Dismiss, but it was rejected by the Court on discrepancy as untimely [Doc. No. 43]. After the document was rejected, County counsel failed to contact the Court for an extension or to take any further

remedy. Thus, the Reply was not considered by the Court in conducting its analysis.

2. The following facts were alleged in Plaintiff's Complaint.

On April 29, 1983, Dr. Roger Williams, the Chief of Pathology from Children's Hospital acting as the "de facto" coroner, performed Phillip's autopsy. Initially, Dr. Williams' preliminary autopsy findings reported to the San Diego Police Department were consistent with an accidental death. Plaintiff alleges Dr. Chadwick, also acting in the role of "de facto" coroner, investigated Phillip's medical history to determine if he was a victim of a non-accidental injury. After conducting his investigation, Dr. Chadwick reported to the San Diego District Attorney his conclusion that Phillip died from a "non-accidental injury." Phillip's death certificate was signed by Dr. M.L. Murphy, the acting deputy coroner for the County of San Diego. Dr. Murphy first entered code 9608 as the cause of death in Phillip's "pending" death certificate. The code 9608 designates "poisoning by other specified antibiotics." The code was later changed to reflect that Phillip died from abuse.

On or about June 30, 1983, Plaintiff was accused of the murder of Phillip Buell. Plaintiff was arrested, prosecuted, and convicted by a jury. Petitioner was sentenced to fifteen (15) years to life, and remained incarcerated in state prison for almost twenty-one (21) years. Plaintiff filed two petitions for writ of habeas corpus, the second on October 2, 2002. On August 4, 2004, the San Diego County District Attorney's Office requested Plaintiff receive a new trial based on the findings of Dr. Sam Gulino, a forensic pathologist from Florida who the district attorney retained to re-evaluate the evidence. Thereafter, the San Diego District Attorney removed her opposition to Plaintiff's writ of habeas corpus, based on factual innocence. On September 3, 2004, the District Attorney moved to dismiss all charges against Plaintiff in the interest of justice. The motion was granted. On August 10, 2004, Plaintiff was released from custody after serving 7,569 days incarceration subsequent to his conviction.

Plaintiff alleges that Defendants Chadwick and Williams, doctors at Children's Hospital, covered up medical negligence that occurred in Phillip's medical treatment, and that negligence was ultimately responsible for Phillip's death. Plaintiff alleges that while Dr. Murphy initially used code 9608 on Phillip's pending death certificate, the County and Dr. Murphy conspired to delete any reference to 9608 on the final certificate and falsely stated that Phillip died because he was "beaten by another." Plaintiff further alleges that the County of San Diego had a policy, practice and/or custom of delegating its duty to allow doctors at Children's Hospital to perform autopsies despite the fact that they might have a conflict because of their employment at the hospital, and despite the fact that they are not board certified pathologists. Plaintiff alleges that to further cover up their negligence, Chadwick, Murphy, and Williams made false representations to the San Diego District Attorney to induce the prosecution to pursue criminal charges against Plaintiff. Plaintiff alleges that the County conspired with Chadwick, Murphy, and Williams to keep Plaintiff incarcerated and legally incapacitated from suing the County by covering up its prior conspiratorial acts. Further, Plaintiff alleges that the policies, practices and procedures of the County of San Diego permitted his false arrest, imprisonment, and conviction.

## STANDARDS OF REVIEW

### 1. Motion to Dismiss

■ A Rule 12(b)(6) motion tests the sufficiency of the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Navarro*, 250 F.3d at 732. Dismissal is warranted under Rule 12(b)(6) where the Complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, the Complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

■ In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002), *cert denied*, 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001), *amended by* 275 F.3d 1187 (9th Cir.2001). When ruling on a motion to dismiss, the Court *may* consider the facts alleged in the Complaint, documents attached to the Complaint, documents relied upon but not attached to the Complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998); *Branch v. Tunnell*, 14 F.3d 449, 453–54

(9th Cir.1994); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986).

## 2. *Request for Judicial Notice*

■ Federal Rule of Evidence rule 201 provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 210, subd. (b) (West 2006). Further, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 210, subd. (d) (West 2006). A court may take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–690 (9th Cir.2001); *see also Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953) (holding a court may take judicial notice of records and reports of administrative bodies).

## DISCUSSION

In the Complaint, Plaintiff alleges seven causes of action. Defendants argue that each fails to state a claim for relief. The parties also seek judicial notice of several documents.

## I. *Request for Judicial Notice*

Plaintiff originally requested the Court take judicial notice of ten documents, including: (1) August 10, 2004 Order Granting the Petition, Setting Aside the Conviction, and Releasing the Petitioner; (2) Proposed Decision (Penal Code §§ 4900 et seq.) Before the Victim Compensation and Government claims Board of the State of California dated January 4, 2006 by Kyle Hedum, Hearing Officer; (3) Reporter's Transcript of Proceedings, Testimony

of Dr. Gregory D. Reiber in Board of Control case No. G550140 from December 7th, 2005, page 97:2 through page 98:3; (4) Initial Report of Suspected Child Abuse under Penal Code sec. 11166 by Diane Armstrong, dated April 27th, 1983; (5) Order (1) Denying Defendant's Motion to Dismiss and (2) Denying Plaintiff's Motion to Vacate Discovery Stay dated December 10, 2004 from *Galbraith v. County of Santa Clara*, case No. C 03–2506 JSW; (6) San Diego County Death Certificate for Phillip Buell dated 4/29/83; (7) San Diego County Death Certificate for Phillip Buell dated 7/21/83; (8) 2002 ICD 9 CM Expert for Physicians Volume 1 and 2; (9) Curriculum Vitae ["CV"] of Roger Anson Williams, M.D.; and (10) Reporter's Transcript of Proceedings, Trial Testimony of Roger Anson Williams, page 86 (Lines 22–25) in *People v. Marsh*, San Diego Superior Court Case No. CR 64376 on November 23, 1983. Plaintiff subsequently removed Requests Nos. (3), (4), (5), (6), (7), and (8), and added a new request, which the Court labels "New Request (4)": Notice of Decision by the Victim Compensation and Government Claims Board of the State of California, dated January 19, 2006 [Doc. No. 38].

Defendants Children's Hospital and Chadwick request judicial notice for (1) Plaintiff's Petition for Writ of *Habeas Corpus*, filed April 7, 1995; and (2) Plaintiff's Petition for Writ of *Habeas Corpus*, filed October 21, 2002. Further, Defendants object to Plaintiff's Request Nos. (2), (3), (5), and (9), claiming facts and arguments contained in those requests are subject to reasonable dispute and therefore not within the scope of Federal Rule of Evidence, rule 201.

Defendants County, Williams, and Murphy request judicial notice for (A) Petition for Writ of Habeas Corpus dated April 1, 1995; (B) Petition for Writ of Habeas Corpus dated October 21, 2002; (C) Return to Petition for Writ of Habeas Corpus dated July 28, 2003; (D) Traverse to Return dated June 7, 2004; (E) Points and Authorities in Support of Traverse dated June 7, 2004; (F) Request to Grant the Petition and Set Aside Petitioner's Conviction dated August 3, 2004; (G) Dr. Guilino's Report; (H) Motion to Dismiss dated August 31, 2004; (I) Government Tort Claim time stamped February 7, 2005; (J) Rejection of Claim dated February 15, 2005; (K) Rejection of Claim dated March 23, 2005; and (L) Declaration of Jay Coulter dated July 23, 2003. Plaintiff objects to Request No. (L), arguing the Court may take judicial notice of the exhibit's existence, but not the truth of the facts contained therein.

A court may take judicial notice of what attached documents contain, but not the truth of those contents and a judicially noticed fact must not be subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–690 (9th Cir.2001); Fed. R.Evid. 210, subd. (b) (West 2006). Defendants' objections to Request Nos. (3) and (5) are moot. While Defendants argue Request No. (2) contains facts subject to reasonable dispute, at this stage of the proceedings, the Court does not take judicial notice of the truth of the facts cited therein. With the exception of Request No. (9), the Court takes Judicial Notice of the existence of all of Plaintiff's remaining Requests, including Request No. (2) and New Request (4), the proposed decision and notice of decision by the Victim Compensation Board.

Defendants oppose the Court taking judicial notice of Request No. (9) because Defendant Williams's CV has not been authenticated, nor has any foundation been laid. The Court finds Request No. (9) contains facts subject to reasonable dispute and therefore the Court does not take Judicial Notice of Request No. (9).

The Court takes Judicial Notice of the existence of Defendants Children's Hospital and Chadwick's Request Nos. (1) and (2), Plaintiff's Petitions for Writ of *Habeas Corpus.*

The Court takes Judicial Notice of the existence of Defendants County, Williams, and Murphy's Request Nos. (A)-(L), but not the truth of the facts contained therein.

## II. § 1983 Violations of the Fourth and Fourteenth Amendments

■ Plaintiff alleges that Defendants Murphy, Chadwick, and Williams were acting under color of state law when they violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983. 42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983 (West 2006). Defendants Children's Hospital, Williams, and Chadwick contend that Plaintiff fails to allege adequate causation and cannot allege he suffered a federally protected interest, a violation of due process or an infringement of a constitutional right. Defendants Children's Hospital and Chadwick further contend they are immune from suit under California Penal Code Section 11172 and the Witness Immunity Doctrine. Defendants Williams and Murphy contend Plaintiff's civil rights claim lacks causation because the District Attorney made an independent decision to prosecute.

### A. "Under Color of State Law"

■ The United States Constitution protects individual rights from government action, not private action. *Single Moms, Inc. v. Montana Power Company,* 331 F.3d 743, 747 (9th Cir.2003). Accordingly, "[o]ne of the requisite elements for stating a claim under § 1983 is that the violation was committed by a 'person' acting under color of state law." *Cortez v. County of Los Angeles,* 294 F.3d 1186, 1188 (9th Cir. 2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). In *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), the court held a private individual is acting under color of state law when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." [3] The Court may consider various factors in determining whether the nexus requirement is satisfied, including whether the government delegated a "public function" to a private actor. *See Single Moms, Inc.,* 331 F.3d at 747; *West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

■ To survive Defendants' Motion to Dismiss, Plaintiff must allege Defendants Murphy, Chadwick, and Williams were acting under color of state law when they violated Plaintiff's constitutional rights. Plaintiff alleges Defendant Murphy acted under color of state law because he was a physician licensed to practice medicine as the deputy coroner for the County of San Diego. Further, Plaintiff satisfies the *Single Moms* nexus requirement by alleging Defendant County of San Diego delegated the public function of county coroner in

---

**3.** "If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." *Brentwood Academy,* 531 U.S. at 295 n. 2, 121 S.Ct. 924.

child death cases to Defendants Williams and Chadwick.

██ Further, Plaintiff alleges that Defendants conspired with the prosecutor to deny Plaintiff his constitutional rights. An allegation that a private person conspired with a state official satisfies the requirement that a defendant act under color of state authority. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Accordingly, the Court finds Plaintiff's theories and accompanying facts sufficiently allege Defendants Murphy, Chadwick, and Williams acted under color of state law in the course of the alleged deprivations of Plaintiff's constitutional rights.

### B. Causation

██ Defendants Williams, Chadwick, and Murphy claim Plaintiff's allegations lack the necessary causal link to establish a § 1983 claim. Specifically, Defendants claim they did not cause Plaintiff's injuries because there were two superceding causes: 1) the decision of the district attorney to prosecute, and 2) the decision of the jury to convict.

██ Liability under § 1983 lies against a defendant only if he causes Plaintiff's deprivation of rights. *See Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In *Thomas v. Chadwick*, 224 Cal.App.3d 813, 818 n. 5, 274 Cal.Rptr. 128 (1990), the court noted that liability under § 1983 requires the defendants' actions be the proximate cause and not merely the cause-in-fact of the deprivation. The *Thomas* court noted that "[s]everal courts have concluded that merely supplying authorities with a report of criminal activity does not 'proximately cause' the resulting arrest, reasoning that the intervening governmental investigation or decision to prosecute is a superseding cause." *Id., citing Arnold v. Intern. Business Machines*, 637 F.2d at 1356–1358;

*McKenzie v. Lamb*, 738 F.2d 1005, 1011 (9th Cir.1984).

However, in *McKenzie*, the court granted summary judgment for defendant because "[h]e played no part in the arrests and seizures which form the basis of appellants' damage claims, nor is it alleged that he had any input into the decision-making of the Las Vegas police." *McKenzie v. Lamb*, 738 F.2d at 1011. Here, Plaintiff alleges that Defendants did in fact have input into the district attorney's decision to prosecute. Further, in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir.2002), the court held that a coroner's intentional falsification of an autopsy report that leads to prosecution can support a claim under § 1983. The complaint in *Galbraith* was sufficient to withstand dismissal because "the amended complaint alleges that Dr. Ozoa deliberately lied about the autopsy in the autopsy report, in his communications with other investigators, and on the witness stand at the preliminary hearing in order to cover up his incompetence, and that these lies *proximately caused* Galbraith's arrest and prosecution for murder." *Galbraith*, 307 F.3d at 1126–1127 (emphasis added). Here, Plaintiff's Complaint alleges virtually identical facts as those in *Galbraith*. Therefore, at this stage of the proceedings, Plaintiff's allegations of causation are sufficient to withstand dismissal.

Additionally, while prosecutors typically enjoy a presumption of independence, the court in *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir.2004), held that "the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in

causing the initiation of legal proceedings." *Awabdy,* 368 F.3d at 1067. Plaintiff's Complaint contains allegations that Defendants improperly exerted pressure, knowingly provided misinformation, concealed and destroyed exculpatory evidence and were actively instrumental in causing legal proceedings against him. Further, the court in *Galbraith* held that "the presumption of independent prosecutorial judgment in the charging decision is an evidentiary presumption applicable at the summary judgment stage … it is not a pleading requirement to be applied to a motion to dismiss." *Galbraith,* 307 F.3d at 1126.

Accordingly, at this stage of the proceedings, the Court finds Plaintiff's Complaint sufficiently alleges a causal link to survive Defendants' Motion to Dismiss.

### C. *Failure to Allege a Federally Protected Interest*

■ Defendants also oppose Plaintiff's § 1983 claim by arguing Plaintiff cannot allege a federally protected interest, a violation of due process, or infringement of a constitutional right. Plaintiff claims he was deprived of his rights guaranteed by the Fourth and Fourteenth Amendments.

The Fourth Amendment addresses "pretrial deprivations of liberty." *See* U.S.C.A. Const. Amend. IV; *Albright v. Oliver,* 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Galbraith,* 307 F.3d at 1127. Plaintiff alleges he suffered pretrial deprivations of liberty in his pretrial arrest and incarceration. In *Galbraith,* the court held "a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." *Galbraith,* 307 F.3d at 1126; *see Cabrera v. City of Huntington Park,* 159 F.3d 374 (9th Cir.1998). Plaintiff alleges Defendants, acting as the county's coroner or "de facto" coroner, inten-

tionally falsified Phillip's autopsy report which played a material role in the Plaintiff's arrest and prosecution. Based on the record before the Court, Plaintiff's Complaint therefore adequately alleges a Fourth Amendment violation.

■ The Fourteenth Amendment addresses the deprivation of liberty without due process of law. *See* U.S.C.A. Const. Amend. XIV. Plaintiff alleges he suffered a deprivation of liberty of approximately 21 years. Defendant argues Plaintiff received a trial and jury verdict and therefore cannot complain his deprivation was without due process. *See Thomas,* 224 Cal.App.3d at 817, 274 Cal.Rptr. 128.

The Supreme Court has held, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released … The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.'" *Baker,* 443 U.S. at 146, 99 S.Ct. 2689. Plaintiff alleges Defendants acted under color of state law to conceal or destroy exculpatory evidence, and further conspired to prosecute Plaintiff and keep him incarcerated. Plaintiff cites *Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir.2001), which held, "we are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately *fabricated by the government.* Perhaps because the proposition is virtually self-evident, we are not aware of any prior cases that have expressly recognized this specific right, but that does not mean that there is no such right." *Devereaux v. Abbey,* 263 F.3d 1070, 1074–1075 (9th Cir.2001) (emphasis added).

Plaintiff is not alleging the government fabricated evidence. In fact, Plaintiff acknowledges the prosecution merely relied on the characterizations made by Defendants and "would not have prosecuted 'a case if there was significant difference of opinion between the medical professionals involved...' (Citation omitted)" *Plaintiff's Opposition to Defendants' County of San Diego and M.L. Murphy Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6)* at 8. Plaintiff notes his allegations are very similar to those alleged in *Galbraith,* but there, the court found only "that Fourth Amendment principles, and not those of due process, govern the case." *Galbraith,* 307 F.3d at 1127.

The Court finds Plaintiff's Fourteenth Amendment violation claim fails to state a claim for which relief can be granted and should therefore be dismissed pursuant to FRCP 12(b)(6).

### D. Immunities

■ Finally, Defendants argue they are immune from Plaintiff's § 1983 claim. In general, state immunities do not apply to suits brought under § 1983. The Supreme Court in *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) noted, "[a]ccordingly, we have held that a state law that immunizes government conduct otherwise subject to suit under section 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." *Felder,* 487 U.S. at 139, 108 S.Ct. 2302; *see also Martinez v. State of California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise;

and the supremacy clause of the Constitution insures that the proper construction may be enforced.").

### i. Child Abuse and Neglect Reporting Act

■ Defendants Children's Hospital and Chadwick contend that they are immune from suit under the Child Abuse and Neglect Reporting Act, specifically California Penal Code sections 11164 and 11172. *Defendants Children's Hospital San Diego and David L. Chadwick, M.D.'s Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6)* ("Chadwick's P & A") at 5–8. Plaintiff argues it is inappropriate to allow Defendants immunity under § 11172 because California Penal Code § 11172 is not an absolute bar to a § 1983 law suit, Defendants' actions went beyond the scope of reporting of abuse, and because Defendants were the parties responsible for Phillip's injuries and death. *Plaintiff's Points and Authorities in Opposition to Defendant Children's Hospital and David L. Chadwick's Motion to Dismiss Complaint Pursuant to FRCP 12(b)(6)* ("Opposition to Chadwick") at 3–13.

Defendants Children's Hospital and Chadwick claim they are entitled to absolute immunity under the California Child Abuse and Reporting Act, even in federal civil rights suits. Defendants argue that California's mandated reporter immunity should be applied to federal claims because the application of the immunity does not conflict with the intent and purpose of federal law.

California Penal Code § 11164 states that:

The intent and purpose of this article is to protect children from abuse and neglect. In any investigation of suspected child abuse or neglect, all persons participating in the investigation of the case

shall consider the needs of the child victim and shall do whatever is necessary to prevent psychological harm to the child victim.

Cal.Penal Code § 11164 (West 2006). Concerning the duty to report, § 11166 reads:

> [A] mandated reporter shall make a report to an agency ... whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect... For the purposes of this article, "reasonable suspicion" means that it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect.

Cal.Penal Code § 11166 (West 2006). Section 11172 controls immunity from liability under the Child Abuse and Reporting Act and provides, "[n]o mandated reporter shall be civilly or criminally liable for any report required or authorized by this article, and this immunity shall apply even if the mandated reporter acquired the knowledge or reasonable suspicion of child abuse or neglect outside of his or her professional capacity or outside the scope of his or her employment." Cal.Penal Code § 11172(a) (West 2006).

In *Thomas v. Chadwick,* 224 Cal.App.3d 813, 816, 274 Cal.Rptr. 128 (1990), the plaintiffs brought a § 1983 claim against defendant for filing false claims of child abuse and the defendant claimed immunity under California Penal Code section 11172. The *Thomas* court relied on 42 U.S.C. § 5106a(b)(1)(B) to illustrate Congress' intent to authorize state immunity statutes for reporting of child abuse and held that the Legislature "intended that *even inten-*

*tionally false* reports by a mandated reporter are immunized." *Thomas,* 224 Cal. App.3d at 820, 824–827, 274 Cal.Rptr. 128.

Plaintiff argues that *Thomas*' reading of Congressional intent is flawed and the state court's holding should not be followed in the instant case. *See* Opposition to Chadwick at 8–12. Instead, Plaintiff argues the Court should follow the intent of Congress in providing only a qualified immunity for reporters of abuse. *Id.* Plaintiff alleges Defendants acted in bad faith in reporting abuse in order to cover up their own wrong-doing. *Id.*

The Court will not rule on this issue of whether Defendants are entitled to qualified or absolute immunity, because the Court finds at this time that the immunity statute does not apply to Defendants under the *James W.* case.

Citing *James W. v. Superior Court,* 17 Cal.App.4th 246, 255, 21 Cal.Rptr.2d 169 (1993), Plaintiff argues that the mandatory reporting privilege should not be extended to acts that occur beyond the mere reporting of child abuse. *See* Opposition to Chadwick at 3–8. Plaintiff argues that Defendants Children's Hospital and Chadwick's actions went beyond the scope of conduct protected by the mandated reporter immunity. *See* Opposition to Chadwick at 3–8.

In *James W.,* a father was accused of abusing his daughter by a hospital worker and detective. *James W.,* 17 Cal.App.4th at 248, 21 Cal.Rptr.2d 169. Soon after, a therapist and an investigative social worker fought to have the daughter adopted and the father convicted, a campaign that included the concealment of evidence, coercion, and perjury. *Id.* at 249–252, 21 Cal. Rptr.2d 169. The court held the therapist and social worker could not claim immunity under § 11172, finding:

> The Act is a reporting statute and its protection runs to reporting: it does not

apply to activities that continue more than two years after the initial report of abuse by parties who are not acting as reporters... Once a report is made, responsibilities shift and governmental authorities take over ...The focus of the Act is, as such, directed toward discovering suspected child abuse and, to that end, encouraging reporters to spread the word as quickly as possible without fear of suit so that independent governmental agencies can remove the child from immediate danger and investigate. *Id.* at 253, 254, 21 Cal.Rptr.2d 169. Plaintiff alleges that Defendants went beyond reporting suspected abuse and instead used their positions to cover up the administration of Mannitol which was responsible for Phillip's death, that Defendant Chadwick abused his position as de facto coroner to cover up medical mistreatment, and conspired with Defendants Murphy and Williams to deprive Plaintiff of his constitutional rights. *See* Opposition to Chadwick at 6–7.

Additionally, Plaintiff argues the mandated reporter immunity is inapplicable in the instant case because Defendants, specifically Defendant Chadwick, were directly responsible for Phillip's injuries, and it would therefore be inappropriate to allow the wrongdoer to take refuge in the immunity provided by the Child Abuse and Reporting Act. *See* Opposition to Chadwick at 4–6. Plaintiff states that allowing a mandated reporter to harm a child, report the harm, and then be immune from liability "shocks the conscience." *See* Opposition to Chadwick at 5; *see also James W.,* 17 Cal.App.4th at 252 n. 8, 21 Cal.Rptr.2d 169 ("[t]he immunity created by Penal Code section 11172 should not extend [to] intentional torts committed by the health care practitioner against her minor patients.").

The Court finds Plaintiff's allegations are analogous to the facts in *James W.* Plaintiff alleges that Defendants went be-yond the mere reporting of Phillip's abuse and led a campaign, involving conspiracy and destruction of evidence, to have Plaintiff convicted for Phillip's death. Plaintiff alleges that Defendants acted "in further-ance of the conspiracy to cover up malpractice and in advancing his child abuse mantra which resulted in funding for his programs implemented at Children's Hospital...". Complaint at 16. Plaintiff alleges that Defendants "conspired to cover up the medical malpractice claim for administering Mannitol and the misdiagnosis of Phillip's preexisting bleeding problem by fellow child abuse committee pediatrician..." Complaint at 36. At this stage of the proceedings, the Court finds Plaintiff's allegations cast Defendants outside the mandated reporter immunity and therefore, the Court finds dismissal inappropriate.

### ii. *Witness Immunity*

■ Defendant Chadwick argues that even if Plaintiff's § 1983 claims could survive the mandated reporter statute, Defendant still enjoys witness immunity in § 1983 cases that are based on prior criminal litigation.

■ A witness has absolute immunity from liability for damages under section 1983 for testimony given at trial. *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In *Franklin v. Terr,* 201 F.3d 1098 (9th Cir.2000), the court found that this immunity extends to cases where the witness allegedly conspired to make false testimony. However, in *Cunningham v. Gates,* 229 F.3d 1271, 1291 (9th Cir.2000), the court noted, "[o]bviously, testimonial immunity does not encompass non-testimonial acts such as fabricating evidence."

Plaintiff's allegations focus centrally on Defendant's actions as the "de facto coroner," tampering with evidence and supply-

ing false medical records to the prosecution. None of those allegations are reached by the Witness Immunity Doctrine. The court in *Galbraith* held that a coroner's intentional falsification of an autopsy report that plays a material role in the Plaintiff's false arrest and prosecution can support a claim under § 1983. *Galbraith*, 307 F.3d at 1126. Therefore, at this initial stage, the Court finds Defendant Chadwick is not entitled to dismissal based on the Witness Immunity Doctrine.

### III. Malicious Prosecution

In his second cause of action for malicious prosecution, pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants Murphy, Chadwick, Williams, and Does 1–100, acting under color of authority, were the moving force behind his criminal prosecution. In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy*, 368 F.3d at 1066. Furthermore, under California law, "in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871, 254 Cal.Rptr. 336, 765 P.2d 498 (1989). Put another way, a plaintiff must show the prior action was "commenced by or at defendant's direction and pursued to a termination in plaintiff's favor." *Pattiz v. Minye*, 61 Cal. App.4th 822, 826, 71 Cal.Rptr.2d 802 (1998).

In *Awabdy*, the court held, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy*, 368 F.3d at 1066. The court in *Galbraith* held allegations that a coroner intentionally or recklessly falsified an autopsy report, which played a material role in the Plaintiff's prosecution, can support a malicious prosecution claim under § 1983. *See Galbraith*, 307 F.3d at 1126–1127. Other circuits have reached a similar result. In *Pierce v. Gilchrist*, 359 F.3d 1279, 1281–1282 (10th Cir.2004), a plaintiff spent fifteen years in prison for rape before being exonerated after DNA evidence proved his innocence. He filed a § 1983 claim for malicious prosecution against the police department's forensic chemist, claiming she withheld exculpatory evidence and fabricated inculpatory evidence which induced the prosecutor to indict and prosecute plaintiff for rape. *Id.* The court held that the chemist's lack of responsibility in initiating the action did not absolve her from liability for malicious prosecution because her fraudulent claims provided the basis for the prosecution. *Id.* at 1291–1292.

Based on the record before the Court at this time, Plaintiff adequately alleges Defendants, acting as the coroner or "de facto" coroner, wrongfully caused the charges of child abuse and homicide to be filed against him. Further, Plaintiff adequately alleges that Defendants County, Murphy, Chadwick, and Williams conspired to engage in this malicious conduct with the purpose of depriving him of his constitutional right to be free from unlawful seizure.

Defendants argue that Plaintiff cannot allege they acted without probable cause. Defendants note that Plaintiff was actually found guilty and to prove favorable termination, a plaintiff must establish that he prevailed in the underlying action,

and that the termination reflects on his innocence. *Robbins v. Blecher*, 52 Cal. App.4th 886, 893, 60 Cal.Rptr.2d 815 (1997). To prove favorable termination, it is not enough to show that the underlying proceeding was dismissed. The theory underlying the requirement to show favorable termination is that a favorable termination tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the malicious and unfounded charge of crime against an innocent person. *Jaffe v. Stone*, 18 Cal.2d 146, 150, 114 P.2d 335 (1941). "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Eells v. Rosenblum*, 36 Cal.App.4th 1848, 1855, 43 Cal. Rptr.2d 323 (1995).

Plaintiff argues the strong presumption of guilt is removed when the government itself acts to reverse a party's conviction. Here, Plaintiff was released when the San Diego District Attorney removed her opposition to Plaintiff's writ of habeas corpus based on factual innocence, and thereafter moved to dismiss all charges against Plaintiff in the interest of justice. *See* Complaint at 8. The court in *Awabdy* held, "[w]hen such a dismissal is procured as the result of a motion by the prosecutor and there are allegations that the prior proceedings were instituted as the result of fraudulent conduct, a malicious prosecution plaintiff is not precluded from maintaining his action unless the defendants can establish that the charges were withdrawn on the basis of a compromise among the parties or for a cause that was not inconsistent with his guilt." *Awabdy*, 368 F.3d at 1068. Further, *Awabdy* held that a plaintiff could rebut a finding of probable cause by showing that the criminal prosecution was induced by "fraud, corruption, perjury, fabricated evidence, or other wrongful

conduct taken in bad faith." *Awabdy*, 368 F.3d at 1067. Plaintiff alleges the proceedings against him were the result of Defendants' fraudulent, bad faith conduct and after 21 years in prison, there is no evidence to suggest Plaintiff's charges were withdrawn on the basis of a compromise.

Accordingly, at this stage of the proceedings, the Court finds that Plaintiff's allegations in his second cause of action for malicious prosecution are sufficient to survive the Motion to Dismiss from Defendants County, Murphy, Chadwick, and Williams.

### IV. § 1983 Monell Claims

Plaintiff alleges in his third cause of action that Defendant San Diego County established and/or followed policies, procedures, customs and/or practices which were the moving force and cause of deprivation of Plaintiff's constitutional rights. Specifically, Plaintiff alleges his Fourth Amendment right against unlawful seizure was violated by (a) the policy of delegating to Defendants Children's Hospital, Chadwick, and Williams the role of county coroner, charged with determining the cause of child death cases; (b) the policy of allowing hospital pathologists, including Defendant Williams, to perform autopsies in child death cases without proper knowledge and training and without being a board certified forensic pathologist; (c) the policy of soliciting and offering in criminal investigations the statements of medical professionals pertaining to areas of knowledge in which they lack expertise; (d) the policy of using trickery, duress, fabrication, and/or false testimony or evidence in preparing and presenting autopsy reports and medical opinion evidence for use in criminal proceedings; (e) acting with deliberate indifference in training its employees, including physicians performing child

death autopsies; (f) the policy of encouraging the prosecuting agency to file criminal charges before the determination of probable cause has been made alleging child abuse and the falsely determining the cause of death to conform to the charge filed; and (g) the policy of wrongfully continuing the detention of individuals without proper investigation when subsequent information informed Defendant of the wrongful prosecution. Defendant County argues that Plaintiff's claims merely allege negligence and are not actionable under § 1983 and further, that Plaintiff has not identified who commenced the policies, and that Plaintiff's claims fail to allege how the wrongdoing by coroners and physicians conformed to a custom or policy by the public entity.

 A municipality or other local government entity may be sued for constitutional torts committed by its officials according to an official policy, practice, or custom. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A litigant can establish a *Monell* claim in one of three ways: "(1) by showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th

Cir.2005); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("A Section 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.' "). When the disputed action was conducted by state officers, the Ninth Circuit has also held, "In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.' " *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) *quoting Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986).

The Supreme Court upheld the Ninth Circuit's "bare allegation requirement" in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *Leatherman* rejected the Fifth Circuit's "heightened pleading standard" for *Monell* claims as discordant with the liberal system of "notice pleading" in Rule 8(a) of the Federal Rules of Civil Procedure.[4] *Id.* at 168, 113 S.Ct. 1160. Plaintiff has alleged more than negligence in his *Monell* claims. The allegations point to conspiratorial acts and intentional wrongdoing. Further, Plaintiff is not required to identify who commenced the policies at this stage of the proceedings. In *Pembaur v. City of Cincinnati*, 475 U.S.

4. In *Leatherman*, the Supreme Court addressed the Defendant's concern that such a liberal pleading requirement might invite frivolous claims, stating, "Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."

469, 484, fn. 10, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court noted, "[a] § 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'" Plaintiff's *Monell* claims sufficiently allege Defendant's conduct conformed to a municipal policy and deprived Plaintiff of his constitutional right against unlawful seizure, satisfying the Ninth Circuit's bare allegation requirement for a *Monell* claim. Accordingly, at this stage of the proceedings, the Court finds Plaintiff's *Monell* allegations sufficient to withstand Defendant's Motion to Dismiss.

### V. False Imprisonment

 Plaintiff alleges that Defendants Murphy, Children's Hospital, Chadwick, and Williams caused him to be unlawfully arrested, prosecuted and convicted. Defendants argue Plaintiff's fourth cause of action should be dismissed because Plaintiff was confined by law enforcement officials effecting a lawful arrest. Under California Penal Code section 236, false imprisonment is the "unlawful violation of the personal liberty of another." Cal.Penal Code § 236 (West 2006). In California, the elements of false imprisonment are "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time." *Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1205 (9th Cir.2003); *Scofield v. Critical Air Medicine, Inc.*, 45 Cal.App.4th 990, 1001, 52 Cal.Rptr.2d 915 (1996).

 California law protects a law enforcement officer from liability for false arrest or false imprisonment where the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2) has reasonable cause to believe the arrest is lawful. *Cervantes v. United States*, 330 F.3d 1186, 1188 (9th Cir.2003); *see also Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir.2004). Plaintiff's Complaint for false imprisonment is aimed at Defendants Murphy, Children's Hospital, Chadwick, and Williams but it is not clear from the record how any of the listed Defendants actually confined Plaintiff. The State of California and its officers confined Plaintiff, but they were effecting a lawful arrest or had reasonable cause to believe the arrest was lawful. While the *Awabdy* court held that malicious prosecution actions are not limited to suits against prosecutors and may be brought against other persons who caused the charges to be filed, *Awabdy* is silent on whether false imprisonment claims may be equally extended. Plaintiff offers no authority upholding a claim of false imprisonment against parties that did not actually confine a plaintiff but merely provided fraudulent information to the prosecution, which in turn effected a good faith warrant and arrest. Under *Blaxland* and *Scofield*, Plaintiff cannot make a *prima facie* case of false imprisonment. While he was confined for an appreciable amount of time, Plaintiff was incarcerated by law enforcement officers acting within the scope of their authority.

The Court finds that Plaintiff has not stated a claim for false imprisonment and therefore, his fourth cause of action must be dismissed.

### VI. Intentional Infliction of Emotional Distress

 Plaintiff alleges that Defendants Children's Hospital, Chadwick, Williams, Murphy, County, and Does 1–100 engaged in outrageous conduct that caused Plaintiff severe emotional distress. Defendants argue that Plaintiff fails to state a claim for

intentional infliction of emotional distress ("IIED"), that even if Plaintiff could state a claim, it is time barred by California's statute of limitations, and further, Defendants are immune from a IIED claim under California Civil Code section 47(b) and California Government Code sections 820.2, 820.4, and 821.6.

The elements of a cause of action for IIED are (1) outrageous conduct by defendant, (2) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (3) severe emotional distress, and (4) an actual and proximate causal link between the tortious conduct and the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 233 Cal.Rptr. 308, 729 P.2d 743 (1987). To maintain a claim for intentional infliction of emotional distress, the "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982), *citing Fuentes v. Perez*, 66 Cal.App.3d 163, 170, 136 Cal.Rptr. 275 (1977).

Plaintiff alleges Defendants intentionally accused Plaintiff of abusing Phillip to hide their own wrongdoing, causing Plaintiff to be unlawfully seized and deprived of his liberty for 21 years. In similar cases, claims of IIED have survived a motion to dismiss. For example, in *Trujillo v. Puro*, 101 N.M. 408, 415, 683 P.2d 963 (1984), a plaintiff's IIED claim survived when he alleged a physician included false statements in the plaintiff's hospital records. In *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 125, 437 A.2d 1236 (1981), a plaintiff successfully filed a claim for IIED against hospital workers who intentionally misinformed plaintiff he was solely responsible for his friend's death where the death was actually caused by the hospital's negligence. Accordingly, at this time, the Court finds Plaintiff has alleged facts sufficient to state a claim of IIED.

Defendants further argue that even if Plaintiff can allege sufficient facts to state a claim of IIED, Plaintiff's fourth cause of action is still time barred by California's statute of limitations. Defendants argue that, at most, Plaintiff's claim could have been tolled for two years and because Defendants' alleged conduct occurred in 1983, Plaintiff's state law claims became time barred in 1985. Defendant cites California Code of Civil Procedure section 352.1 which provides that a party's state tort claim may be tolled when he suffers a disability due to incarceration. Cal. Civ. Pro.Code § 352.1 (West 2006). Section 352.1 tolls the statute for a period of two years for prisoners incarcerated for a term less than a life sentence. Additionally, Defendants County, Murphy and Williams argue that Plaintiff's claim is time barred because Plaintiff failed to first file a government tort claim with the proper public entity pursuant to California Government Code section 945.4, and therefore Plaintiff would have had to file his state law claims within six months of his 2002 second habeas petition.

Plaintiff was given a life sentence under California Penal Code Section 190(a) and therefore, § 352.1 is inapplicable. *See Grasso v. McDonough Power Equipment*, 264 Cal.App.2d 597, 601, 70 Cal.Rptr. 458 (1968) (holding that limitations are tolled during the period of incarceration for prisoners serving a life sentence). Further, Plaintiff's claims may be tolled under California's equitable tolling doctrine. In 2002, Plaintiff was pursuing his second habeas petition. The Ninth Circuit has held that "[u]nder California's equitable tolling doctrine, the prior pursuit of a federal remedy may toll the state statute of limitations when a person has 'several formal legal remedies and reason-

ably and in good faith pursues one.' " *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir.1987) *citing Jones v. Tracy School District*, 27 Cal.3d 99, 108, 165 Cal. Rptr. 100, 611 P.2d 441 (1980). It was reasonable for Plaintiff to pursue his habeas petition before filing his civil claims, several of which were dependent on a favorable termination of his sentence. Thus, the Court finds that Plaintiff was acting in good faith by pursuing one of his formal legal remedies.

In addition, Plaintiff also cites *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1412–1413, 115 Cal.Rptr.2d 269 (2002), where the court held that permitting a plaintiff to pursue state tort claims notwithstanding a conviction would allow him to profit by his own wrongdoing, and therefore he would be unable to pursue such torts until after his release. Plaintiff argues that had he tried to raise his state tort claims while incarcerated, his claims would have been barred under the holding of *Susag*. Plaintiff argues he was therefore forced to wait to bring his claims until the criminal proceedings brought against him were favorably terminated, albeit 21 years later.

Citing *Wyatt v. Union Mortgage Company*, 24 Cal.3d 773, 788, 157 Cal.Rptr. 392, 598 P.2d 45 (1979), Plaintiff further argues that his state tort claims should be tolled until his release from prison under the "last overt act" doctrine because Defendants allegedly engaged in an ongoing conspiracy to keep Plaintiff incarcerated. Under *Wyatt*, when a civil conspiracy is properly alleged, "[t]he statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." *Id.* at 786, 157 Cal.Rptr. 392, 598 P.2d 45. The *Wyatt* court noted:

> Statutes of limitations have, as their general purpose, to provide repose and to protect persons against the burden of

having to defend against stale claims. [citation omitted] So long as a person continues to commit wrongful acts in furtherance of a conspiracy to harm another, he can neither claim unfair prejudice at the filing of a claim against him nor disturbance of any justifiable repose built upon the passage of time.

*Id.* at 787, 157 Cal.Rptr. 392, 598 P.2d 45. Plaintiff alleges that Defendants conspired to conceal their responsibility for Phillip's death and keep Plaintiff incarcerated. Plaintiff further alleges that Defendants continued their fraudulent conduct throughout his incarceration. Accordingly, at this stage of the proceedings, the Court finds Plaintiff's state law claims are not time barred.

■■■■ Defendants further argue that they are immune from Plaintiff's IIED claim under California Civil Code section 47 subdivision (b)(2), which makes privileged any communicative acts made in the course of judicial proceedings. Cal. Civ. Code § 47, subd. (b)(2) (West 2006). Section 47 applies to all torts except malicious prosecution and applies to any communication (1) made in a judicial or quasijudicial proceeding, (2) by litigants or other participants authorized by law, in or out of court, (3) to achieve the objects of litigation and (4) has some connection or logical relation to the action. *Silberg v. Anderson*, 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365 (1990).

■■■ Section 47(b) privileges communications, not tortious conduct. *Kimmel v. Goland*, 51 Cal.3d 202, 205, 271 Cal.Rptr. 191, 793 P.2d 524 (1990). In *Kimmel*, the court found the damages sought were not based on the disputed communications, but on the underlying violation of the party's right to privacy and found it inappropriate to extend § 47 protection to unlawful conduct. *Id.* at 212, 271 Cal.Rptr. 191, 793 P.2d 524. Defendant relies on *Block v.*

*Sacramento Clinical Labs.*, 131 Cal.App.3d 386, 387–88, 182 Cal.Rptr. 438 (1982), where the district attorney relied on a toxicologist's erroneous report, to prove the autopsy and medical reports issued by Children's Hospital, Chadwick, Williams, and Murphy were privileged. However, Plaintiff does not merely allege that Defendants made mistakes in their reports, but that they conspired to falsify evidence that caused Plaintiff damages and a deprivation of his constitutional rights. Therefore, at this stage of the proceedings, the Court finds it inappropriate to extend Defendants § 47 immunity.

■ Additionally, Defendants Hospital, Chadwick, Williams, and Murphy argue that they are also immune from suit under California Government Code Sections 820.2, 820.4 and 821.6. Section 820.2 provides: "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2 (West 2006). Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." Cal. Gov't Code § 820.4 (West 2006). Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6 (West 2006).

Plaintiff argues his Complaint is not aimed at the public officials charged with instituting and prosecuting the criminal case against Plaintiff. Immunity under §§ 820.2, 820.4, and 821.6 would apply to the prosecutor and the law enforcement officials who investigated the case. Plaintiff's allegations are aimed instead at medical personnel and coroners whose wrongful actions induced the prosecutor to institute a criminal action. Further, § 820.2 is reserved for only deliberate and considered policy making decisions. *Caldwell v. Montoya*, 10 Cal.4th 972, 981–982, 42 Cal. Rptr.2d 842, 897 P.2d 1320 (1995). Defendants' alleged actions do not fall into that category as they are not the product of deliberate and considered policy making decisions. Based on the record before the Court, at this stage of the proceedings, the Court finds Defendants' actions are not privileged under Cal. Gov't Code §§ 820.2, 820.4, or 821.6.

Accordingly, at this initial stage, the Court finds Plaintiff's allegations sufficient to survive Defendants' Motion to Dismiss on his fifth cause of action for intentional infliction of emotional distress.

### VII. State Law Claims

■ Plaintiff further alleges that Defendants County, Murphy, Children's Hospital, Chadwick, Williams, and Does 1 to 100 violated his rights under the United States Constitution and federal laws as well under the Constitution and laws of California. Specifically, Plaintiff alleges Defendants deprived him of his constitutionally protected rights, including his right to privacy and rights provided under California Civil Code Sections 43, 45, 46, 51, 52, and 52.1. Defendants argue they are immune from Plaintiff's state law claims and further, that Plaintiff's claims are time barred.

#### A. California Civil Code § 43

California Civil Code section 43 codifies causes of action for assault, battery, and invasion of privacy, providing, "[b]esides the personal rights mentioned or recognized in the Government Code, every per-

son has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Cal. Civ.Code § 43 (West 2006).

■ The right to privacy is a personal one, it is the right of an individual to be left alone and not dragged into publicity. *Mau v. Rio Grande Oil,* 28 F.Supp. 845, 846 (N.D.Cal.1939). In *Simons v. Marin County,* 682 F.Supp. 1463, 1475 (N.D.Cal. 1987), the court denied summary judgment on the plaintiff's state law invasion of privacy claim arising out of plaintiff's mistaken arrest and the warrantless search of his home. Plaintiff alleges he was dragged into publicity when Defendants conspired to paint him as Phillip's murderer in order to hide their own wrongdoing, resulting in his wrongful imprisonment and damaging his personal relations with his family and community. While Plaintiff has not specifically alleged how Defendants used or threatened to use force against him, he has adequately alleged his right to privacy was violated. At this stage of the proceeding, Plaintiff's § 43 claim survives dismissal.

### B. California Civil Code §§ 45, 46

■ California Civil Code sections 45 and 46 target libel and slander. Section 45 provides, "[l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ.Code § 45 (West 2006). Section 46 provides: "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: (1) Charges any person with crime, or with having been indicted, convicted, or punished for crime." Cal. Civ.Code § 46

(West 2006); *see Allard v. Church of Scientology,* 58 Cal.App.3d 439, 450, 129 Cal.Rptr. 797 (1976) ("[i]n matters of slander that are libelous per se, for example the charging of a crime, general damages have been presumed as a matter of law.").

As the court noted in *Gilbrook v. City of Westminster,* 177 F.3d 839, 861–862 (9th Cir.1999), "a court reviewing a claim of defamation must ask a threshold question: Could a reasonable factfinder conclude that the contested statement implies an assertion of objective fact?" Plaintiff alleges that Defendants made both written reports and oral utterances falsely charging Plaintiff with Phillips's death. Because of these false assertions of objective fact, Plaintiff alleges he suffered emotional and psychological stress as well as a loss of liberty and economic opportunities.

Citing *In re Yagman,* 796 F.2d 1165, 1176 (9th Cir.1986), Defendants argue they did not make any false statements of fact, and further, medical opinions are protected by the First Amendment. In *Yagman,* police officers filed defamation claims against forensic pathologists for false statements made in their reports. *Id.* In the instant case, Plaintiff is not merely alleging Defendants' opinions turned out to be false, but that Defendants intentionally falsified their reports and statements to the prosecution in order to deprive Plaintiff of his liberty and keep him incarcerated for up to 21 years.

■ Defendants also argue that Plaintiff's claim is time barred under California's statute of limitations for libel and slander. Cal.Code Civ. Proc. § 340, subd. (c). As noted earlier in section VI, continuing wrongs are not time barred as long as Plaintiff adequately alleges Defendants engaged in a continuing conspiracy to deprive him of his rights. *See Wyatt,* 24 Cal.3d at 788, 157 Cal.Rptr. 392, 598 P.2d 45. Therefore, at this stage of the pro-

ceedings, the Court finds Plaintiff's claims are not time barred. Accordingly, based on the record before the Court, Plaintiff has adequately alleged a claim under §§ 45 and 46.

### C. California Civil Code § 51

██ California Civil Code section 51 is also known as the Unruh Civil Rights Act and provides:

> (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ.Code § 51 (West 2006). Defendants argue they never denied Plaintiff accommodations and that Plaintiff cannot allege a Unruh Civil Rights claim because he is not a member of a protected class.

██ California law requires the Unruh Civil Rights Act be construed liberally. *Hubbard v. Twin Oaks Health and Rehabilitation Center,* 408 F.Supp.2d 923, 928–929 (E.D.Cal.2004). Plaintiff argues he satisfied the notice pleading requirement of FRCP Rule 8 by alleging that Defendants intentionally denied him full economic and social advantages over the course of 21 years in prison. Further, Plaintiff argues he does not have to prove that he is a member of a protected class. *See* Cal. Civ.Code § 51, Stats. 2000, ch. 98 sec. 1.

██ The purpose of the Unruh Civil Rights Act is to prohibit arbitrary discrimination by businesses on the basis of specified classifications. *Payne v. Anaheim Memorial Medical Center, Inc.,* 130 Cal. App.4th 729, 745–746, 30 Cal.Rptr.3d 230 (2005); *Pizarro v. Lamb's Players Theatre,* 135 Cal.App.4th 1171, 1174, 37 Cal. Rptr.3d 859 (2006). The Court finds De-

fendants' alleged conduct does not fall within the purpose and scope of the Unruh Civil Rights Act. While it is clear Plaintiff's incarceration caused him certain disadvantages, it is not clear how Defendants' alleged conduct is coterminous with a business establishment discriminating against Plaintiff arbitrarily or denying him public accommodations, and Plaintiff offers no further guidance on this issue. Therefore, Plaintiff's § 51 claim must be dismissed.

### D. California Civil Code §§ 52, 52.1

Plaintiff argues that because he was denied his civil rights guaranteed under California Civil Code § 51, he is entitled to compensation guaranteed under Civil Code §§ 52 and 52.1. As noted above, the Court finds Plaintiff has not adequately alleged a § 51 claim because he has not offered any support for how his circumstances fall under the purpose and scope of the Unruh Civil Rights Act. Because Plaintiff's § 51 claim fails, his §§ 52 and 52.1 claims must also be dismissed.

### E. Immunities

Defendants argue they are immune from suit under §§ 47(b), 802.2, 802.4, and 821.6. For the reasons stated above in sections II(D) and VI(B), § 47 immunity does not cover tortious conduct and §§ 802.2, 802.4, and 821.6 do not extend to Defendants under the facts alleged by Plaintiff at this time. At this stage of the proceedings, the Court finds Defendants are not immune from Plaintiff's state law claims.

### VIII. Malicious Prosecution under California Law

As noted above in section II, under California law, "in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of

the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871, 254 Cal.Rptr. 336, 765 P.2d 498 (1989). Plaintiff's criminal proceeding was ultimately terminated in his favor, albeit 21 years later. As noted earlier in section II, malicious prosecution claims are not limited to prosecutors and Plaintiff has sufficiently alleged that Defendants maliciously, and without probable cause, induced criminal proceedings to be filed against him.

Defendants argue they are immune from Plaintiff's state claim of malicious prosecution under §§ 47(b), 802.2, 802.4, and 821.6. However, as noted earlier in sections II(D) and VI(B), § 47 immunity does not cover tortious conduct and §§ 802.2, 802.4, and 821.6 do not extend to the Defendants under the facts alleged by Plaintiff at this time. Therefore, at this stage of the proceedings, the Court finds that Plaintiff has alleged facts sufficient to survive Defendants' Motion to Dismiss on his seventh cause of action for a state claim of malicious prosecution.

## CONCLUSION & ORDER

The Court will grant in part and deny in part Plaintiff's Request for Judicial Notice, grant Defendants' Request for Judicial Notice, and grant in part and deny in part Defendants' Motion to Dismiss. Plaintiff has not alleged facts sufficient to withstand Defendants' 12(b)(6) Motion for his § 1983 Fourteenth Amendment claim, his false imprisonment claim, or his state law claims under §§ 51, 52, and 52.1. At this stage of the proceedings, the Court finds Plaintiff has alleged facts sufficient to withstand Defendants' 12(b)(6) Motion for his § 1983 Fourth Amendment claim, his § 1983 malicious prosecution claim, his *Monell* claims, his intentional infliction of emotional distress claim, his state law

malicious prosecution claim, and his remaining state law claims. Further, at this initial stage, the Court finds Plaintiff's remaining claims are not time barred and that Defendants have not shown, based on the current record, that they are entitled to immunity.

For the foregoing reasons,

**IT IS ORDERED** the Request for Judicial Notice filed by Plaintiff [Doc. No. 38], for Requests Nos. (1), (2), (3), and (5) is **GRANTED.**

**IT IS FURTHER ORDERED** the Request for Judicial Notice filed by Defendants Children's Hospital and Chadwick [Doc. No. 7] is **GRANTED.**

**IT IS FURTHER ORDERED** the Request for Judicial Notice filed by Defendants County, Williams, and Murphy [Doc. No. 11] is **GRANTED.**

**IT IS FURTHER ORDERED** the Request for Judicial Notice filed by Plaintiff on No. (4), Curriculum Vitae of Roger Anson Williams, M.D. [Doc. No. 38] is **DENIED.**

**IT IS FURTHER ORDERED** the Motion to Dismiss filed by Defendants County of San Diego and Murphy [Doc. No. 9], by Defendants Chadwick and Children's Hospital [Doc. No. 5], and by Defendant Williams [Doc. No. 32] is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** with respect to Plaintiff's first cause of action for a § 1983 Fourteenth Amendment violation, the Motions to Dismiss filed by Defendants County of San Diego and Murphy [Doc. No. 9], by Defendants Chadwick and Children's Hospital [Doc. No. 5], and by Defendant Williams [Doc. No. 32] are **GRANTED.**

**IT IS FURTHER ORDERED** with respect to Plaintiff's fourth cause of action for false imprisonment, the Motions to Dis-

miss filed by Defendants County of San Diego and Murphy [Doc. No. 9], by Defendants Chadwick and Children's Hospital [Doc. No. 5], and by Defendant Williams [Doc. No. 32] are **GRANTED.**

**IT IS FURTHER ORDERED** with respect to Plaintiff's sixth cause of action including state law claims under Cal. Civ. Code §§ 51, 52, and 52.1, the Motions to Dismiss filed by Defendants County of San Diego and Murphy [Doc. No. 9], by Defendants Chadwick and Children's Hospital [Doc. No. 5], and by Defendant Williams [Doc. No. 32] are **GRANTED.**

**IT IS FURTHER ORDERED** the Motions to Dismiss filed by Defendants County of San Diego and Murphy [Doc. No. 9], by Defendants Chadwick and Children's Hospital [Doc. No. 5], and by Defendant Williams [Doc. No. 32] are **DENIED** with respect to Plaintiff's first cause of action for a § 1983 Fourth Amendment violation, Plaintiff's second cause of action for § 1983 malicious prosecution, Plaintiff's third cause of action for *Monell* claims, Plaintiff's fifth cause of action for intentional infliction of emotional distress, Plaintiff's sixth cause of action including state law claims under Cal. Civ.Code §§ 43, 45, 46, and Plaintiff's seventh cause of action for state law malicious prosecution.

**IT IS SO ORDERED.**